Take up Rapp v. Franklin County Take up Rapp v. Franklin County Thank you. May it please the court, your honors, Andrea Tequest for Plaintiff George Rapp. This court is asked today to correct a significant error made by the District Court when it abruptly changed its mind without notice, without any motion, without necessary process and procedure, and vacated the judgment on declaratory relief. Counselor, I just want to ask you, under our King vision pay-per-view limited v. Lake Alice Barr, isn't what the District Court did perfectly appropriate under our jurisprudence? No, your honor, it's not. King's vision dealt with the court entering a judgment upon default without any opposition, and then the court reconsidered looking back at it and corrected the factual errors because it entered a default. But the King's vision court was also critical. What I understand is the District Court apparently had failed to look at the provisions of the collective bargaining agreement and realized that the sheriff had the right to assign your client to wherever. He then concluded he was wrong, so he corrected his error. And under the King vision case, isn't that approved, that kind of thing approved in our jurisprudence? No, your honor, it's not. Those cases cited by the defense are to be read in conjunction with other rules, like rule 55 when you enter a default judgment. Like in rule, is it 52 when you're amending a judgment. In this case, the court actually ruled on summary judgment. It reviewed all the collective bargaining provisions. It made factual findings that there was no disputed issue of fact and that the plaintiff was entitled to judgment as a matter of law. When you look at the other rules, your honor, it indicates that, and same with the cases cited by the defense, that within an appropriate amount of time, the court or a party can make a motion or relook at it. Usually it's within 28 days, but in this case, your honor, we're looking at a year later after the court has granted declaratory judgment under rule 57 granted the relief to end the controversy. Resolved an actual dispute vis-a-vis the rights and obligations of the parties and entered a separate judgment under rule 58. None of the cases cited, nor is King Vision a proponent of having these other rules entered, judgments entered, and then going back and reconsidering them. In part, what it does to the record, we have statement of material fact that's been accepted, adopted, and agreed with by the court. The district court said there is no issue of genuine fact. The very same reasons why the court is saying I made a mistake are the same reasons he dealt with in the order granting summary judgment. Let me ask a question. If I can, let me ask a question to make sure I understand your position on the appeal. It seems to me that, first, if you were going to challenge the result below, there are two different propositions. One would be that the judge could not properly change the order. And the second, then, on the merits would be that reinstating someone can only mean putting the person back in the same position. And so maybe you could win on either of those points. But as I understand your position in the district court and now on appeal, your appeal rises or falls on the first of those propositions, that the judge couldn't change the ruling, and then you say in your brief, I mean, basically in the district court, and then you say in your brief, you basically abandoned the second position. You're here putting it all on the proposition that the judge couldn't change the ruling. I have that right, don't I? No, Your Honor. I think you are correct in the first part, that the judge was not able to change his ruling under federal rule of civil procedure 60B because it required a motion, and we didn't have any opportunity to address it and to brief it and to flesh out why he thought he made a mistake. So it left us in the dark. But number two, Your Honor, I think you're correct. The second proposition is the court was right to begin with. So he didn't need to change it. Even if you say he could change it under 60B, he was wrong to change it. Reinstatement meant, as he stated in his ruling, it's plain on its face, it meant to the job of origin. It meant to the job he was wrongfully terminated as determined by the arbitrator. Why didn't you go back to the arbitrator? Yes. So I'm saying why didn't you go back to the arbitrator? The arbitrator is the one that told you in the first place that he was supposed to be reinstated to his original position, right? He said he was to be reinstated, yes, Your Honor. Right. And then you got a different ruling, but it was subject to arbitration. Why didn't you go back to the arbitrator and say, hey, they got this wrong. We want you to rule once again. This is where it's supposed to be. Your Honor, I don't think that the arbitrator got it wrong. We went back to the arbitrator to say, hey, they're not complying. The problem with this Zoom stuff, it's difficult. Yes. The arbitrator, I know you believe the arbitrator got it correct. But then things changed. But the arbitrator still arguably had jurisdiction to set it right again from your perspective. And I'm asking you, why didn't you go back to the arbitrator? Your Honor, we did attempt to go back to the arbitrator. And then the defense appealed the arbitrator's decision and claimed it was arbitrary, capricious, it exceeded his power. And we were in superior court for about a year. And the collective bargaining agreement provides that if a party does not agree with the arbitrator's ruling, then they can state their claim. And the parties are thereafter free to go to the court for remedies. And that's what happened. The defense did it eventually. Let me ask you a question. In your brief, I think at page 18, you cite a Third Circuit decision in Collins. And I think the Third Circuit was right. And you quote them. And you say, and the Third Circuit says, a discharged employee who seeks to be reinstated is really litigating the unfairness of the original discharge. If it's discriminatory, he is, and here's the quote, entitled to be reinstated as if he had never ceased working for the employer, end quote. And then the Second Circuit says it's the equivalent of uninterrupted employment. All right. So if he, if Mr. Rapp had never been terminated, he's there working, the sheriff would be able to move him to the jail. Is that true or not true? Not true. The sheriff couldn't move him to the jail? No, Your Honor. The people that work in corrections are subject to a different collective bargaining agreement. Mr. Rapp was under deputies' collective bargaining agreement. The jail staff is under a different bargaining agreement. And so actually the sheriff put him under, tried to, attempted to put him under both when he created the position in the jail for Mr. Rapp. Well, if, and so if he gets reinstated to his same position, how long does the sheriff have to keep him in the original position before the sheriff can move him? Anywhere else? I'm not sure I understand the question, Your Honor. He can't move him to the jail. He puts him under a different collective bargaining agreement. So he can move him somewhere else but not to the jail. I get it. He would have to move him to a place that would be consistent with his classification of the collective bargaining agreement as a deputy. And I think it's also important to note, Your Honor, that Mr. Rapp was deprived of his law enforcement commission. And that was a big significant issue in this case was when he moved to the jail, he wasn't afforded his commission. He was subject to a different retirement plan. The sheriff created a different position for him. And it was very much not consistent with the job classification under the collective bargaining agreement he started with that he prevailed on in arbitration. With all respect, if I could reserve just a few moments for rebuttal, I'd like to reserve my time. All right. You may, counsel. Mr. Cooley. May it please the court, good morning, Your Honors. I'm Andy Cooley. I'm a special deputy prosecutor representing the county and the sheriff. This case is before you on an appeal from a motion for summary judgment order entered by the trial court. The defendants brought a motion for summary judgment, asserting that there was not evidence to support the claims made by the plaintiff. The typical response to a summary judgment motion is to muster declarations and deposition excerpts and exhibits and then provide a brief to the trial court, indicating that there is a material issue of fact that needs a jury to resolve. That did not happen in this case. When we filed our motion for summary judgment, plaintiff did not produce any declarations or depositions or exhibits. Instead, they produced a very thin five-page brief where they admitted to the trial court that they had no evidence, no argument to support the claims. Unsurprisingly, the trial court granted the summary judgment and, in fact, admonished counsel that she should refer to the Washington Rules of Professional Conduct, which indicate that you should not bring lawsuits where you don't have evidence or argument. You would think from reading the plaintiff's opening brief that this was a case appealed under the Federal Arbitration Act. It was not. This was a standard tort lawsuit in the federal district court asserting constitutional and state law torts. One of the elements of the tort case was a claim under the Washington Declaratory Judgments Act that Mr. Rapp was entitled to a declaration from the trial court on this issue of reinstatement. The plaintiff's brief focuses on a 2020 ruling by the trial court. So as you've already, I think, understood from the briefing, the plaintiff brought an affirmative motion for summary judgment on the declaratory judgment theory. That motion was granted by the trial court. Later in another proceeding, as I was identifying the procedural steps in the case, the trial court said that they was persuaded. In fact, I remember what the trial judge said to me. He goes, Mr. Cooley, it sounds like you think I'm wrong. And I said, I don't like to tell any federal judge they are wrong. And he said, Mr. Cooley, I'm persuaded by your arguments that I've committed an error here. I'm persuaded. I'm thinking seriously about vacating this. So there was a lot of notice that the court was contemplating this potential action. And all the court did by vacating the declaratory judgment, it didn't dismiss the case. It didn't eliminate it. It didn't make it meaningless. It just set it for trial for resolution on the merits. Mr. Rapp suffered no harm by the fact that the trial court said, I'm going to take away a summary judgment that I improvidently granted, and I'm going to make you prove your case on the merits. And so when it came time to prove the case on the merits at the summary judgment stage, that's when Mr. Rapp's lawyer surprisingly said that they would not respond to the arguments made by the defense in support of its summary judgment motion. And that's what led the trial court to dismiss the case. So let me address some of the other comments. Counsel, can I just interrupt you for one second? I just want to focus in on the point that Judge Hinkle asked your opposing counsel about, which is my understanding from the collective bargaining agreement that's in the record is that the sheriff did reserve the right to transfer personnel. And my understanding from the record as well is that the sheriff thought that Deputy Rapp was possibly a danger to the community and to himself. And so under that reservation of rights to the sheriff, he would have a good reason not to leave him on the road, but to move him into the jail. And in answer to Judge Hinkle's question, opposing counsel said, no, that's a separate CBA. But is this the CBA that governs the sheriff's management over all the deputies? And that means placement in whatever facility. So, you know, it's interesting. The word deputy is used to describe a circumstance where a superior official, in this case the sheriff, is allowed to designate to others the powers that the sheriff has. And that's how they become deputies. So one set of deputies are people who are considered corrections deputies. Another set are considered road deputies. The two different deputies are in separate bargaining units. And so corrections deputies have a separate contract and a separate pay scale. Mr. Rapp remained a road deputy when he was reinstated to the sheriff's office and installed into the corrections control booth. The sheriff believed, and the record on this is clear, the sheriff believed, you're right, Judge Wardlaw, that Sheriff Raymond believed Mr. Rapp had a record of violating people's constitutional rights, of disobeying direct orders, of being insubordinate. And he wasn't going to give him a gun and a badge and set him loose on the citizens of Franklin County. And he believed that in order to harmonize the direction from the labor arbitrator and with his rights under the road deputies collective bargaining agreement, he had the right to set the duties, to set the location of work, and to set the hours of work. And he decided that George Rapp's location would be inside the control booth and the duties would be managing the control booth and the hours would be normal daytime hours. So 8 to 5 was Mr. Rapp's. He was paid as a road deputy during this time, paid much more than the people who were corrections deputies. So he was not under the corrections bargaining agreement. He was under the road deputies. And in fact, when Sheriff Raymond terminated him a second time and Mr. Rapp initially tried to grieve that matter under the road deputies agreement, he withdrew through the grievance and he announced that he never wanted to work for Franklin County again. And that's why this idea that he could be reinstated under declaratory judgment is moot. He doesn't want to work for Franklin County. He doesn't want to ever work for Franklin County again, Judge Hinkle. Let me make sure I understand the answer you just gave. Your position is the sheriff could reassign him to the jail. And if I understood you correctly, when he initially grieved the second termination, he did it under the road deputy collective bargaining agreement. Correct. All right. And then he withdrew that grievance and told the district judge that he never wanted to work in a sworn declaration. He never wanted to work for Franklin County again. So let me with my remaining time, let me address Judge Smith's question. Comments about the King Vision case. So this, of course, King Vision is named after the boxing promoter, Don King. And the Ninth Circuit in that King Vision case, King Vision was not a default judgment. King Vision was a money judgment that had been entered following a trial over whether bars, these liquor establishments, had been purloining the prize fight boxing match livestream. And the question was, was the amount that the camera was a jury or bench, but the amount that was awarded proper and the district court believed that it was improper and entered an order changing the judgment amount. So it wasn't a default judgment. And the plaintiff has tried to make an argument to your honors that somehow the sua sponte CR 60 powers of the district court are limited to things like correcting clerical mistakes or default judgments.  And if you look at the court's reasoning, your court's reasoning and King Vision, it was rooted in the Rule 60 and the language in Rule 60 says that upon motion, an order can be changed. And that does not say written motion. It doesn't say motion by a party. And what this court ruled in King Vision was that this language empowered the district court to correct on its own mistakes that it found if it believed that it did a mistake. And it cited CR 1 and the importance of a just and speedy resolution of civil cases for the notion that what's wrong with a district judge changing a mistaken ruling and not having to put the parties through the effort or make it go to this court for on appeal for a change. And so CR 60 would cover any of those. I gather that this one I heard you say. I gather you would also take the position that since the district judge had the colloquy with you about maybe there was a mistake and he was thinking about things that the other side was at least put on notice to that degree. He knew that the judge was thinking about this. Does that play any role in our analysis under the King case? Well, it does only in the sense that in one of the there were three actions under King Vision and one of the actions under King Vision, the district court judge refused to let the bar, the liquor establishment, make the argument that the judgment amount was correct. And so the court reversed that one on a due process basis, not on a CR 60 violation, but on a due process here. There's been no argument by the plaintiffs that they were denied due process. The words due process aren't in any of their briefs. And the judge put them on plenty of notice that he was thinking about that ruling. Thank you very much for my time this morning. Thank you very much, Mr. Cooley. Ms. Telquist, you have some remaining time. Thank you, Your Honor. If you look at the excerpts of the record and you see that hearing, you'll see that the district court initially was ready to rule and suggest that we needed to instruct the jury per the ruling on the declaratory relief in December of 2020. And then later on is somehow persuaded by Mr. Cooley's arguments and suggest he's going to reconsider. I'd like this court to note that the district court every time it had a question requested briefing. It requested briefing from the parties of whether this is moot. We said no. It requested briefing on whether the district court should remain to the arbitrator. Both parties said no. This is all before the ruling in December 2020. Then the court grants substantive ruling, accepts material statements of fact, declares there's no genuine issue, and there's judgment as a matter of law on the declaratory relief. And then if you look at the order granting that judgment and the entry of judgment for the declaratory relief and you compare that with the order denying the motions to certify and for CR 60 relief. The very same reasons were argued and disposed of by the district court as if he forgot his ruling. And no plaintiff was given no opportunity to address these new arguments about the collective bargaining agreement, allowing the sheriff to put him wherever he wants to create a position. The district court had authority to interpret the arbitrator's award to suggest that he didn't have just cause to terminate. He was entitled to be reinstated. I think that's a question. Hello. I'm sorry. You're beyond time. But if it's OK with Judge Wardlow, I'm going to ask a question. And I've got a question. Nobody's brought up. But I'll give you a chance to respond. The document was entered called a judgment. And that's the document. You say the judge couldn't vacate. Well, let me set this out in terms of what the rules of civil procedure actually say about this. Rule 54B allows a court to enter a judgment on fewer than all claims among fewer than all parties. That's what this would have to be because it didn't dispose of all claims among all parties. Rule 54B also says that judgment can only be entered on an express direction by the district court. There was that. And also upon an express finding that there is no just reason for delay. There was no such express finding here. So my question or my suggestion to you is that maybe this is not actually a judgment at all. And Rule 54B says that a ruling that is not a judgment on an express direction, an express finding of no just reason for delay, can be changed at any time. So how do you get around the requirement of Rule 54B for an express finding? Isn't this really just an interlocutory ruling that 54B says can be changed at any time? I don't believe so, Your Honor. I believe that the court entered that because he thought and intended it was final. He determined what reinstatement meant. And that declaratory relief was everything. The sheriff was arguing he was entitled to move him, and the plaintiff was arguing he was entitled to the same position. It was dispositive. That summary judgment motion was either the plaintiff prevails and is entitled to damages or the defense prevails, and that's it. It was a case over, and we went one year down the road. That's true. That's true every time I grant a partial summary judgment on liability. But it is not a judgment, and I can change it whenever I wish. I suppose the difference in this case is it was entered under FRCP 57. It was declaratory, adjudicating the controversy and the rights between the parties. That was the dispute that the parties had, so. Thank you very much, counsel. Thank you. We are well over time. Rapp v. Franklin County will be submitted.
judges: WARDLAW, SMITH, UNKNOWN